By the Court.
There does not exist a doubt in our minds, about the genuine meaning of the act of Assembly. It would be attended with the most inconvenient and pernicious consequences, to determine, that a creditor could not compel a payment from his debtor’s estate, nor even bring a suit against the executors, for a period of twelve months. The order of paying debts, obviously respects voluntary, and not compulsory, payments. Such was the construction coeval with the act; and there has not, to this time, been a single, departure from it.
With respect to the other ground of argument, we were in hopes that some compromise might have been effected. But, we do not hesitate to declare, that although the Court has discretionary power to grant, or to refuse, imparlances, we do not think, that the circumstances of the present case would justify a special interposition, to compel the executors to plead at the first term, contrary to the usual course of practice. The executors have an unquestionable right, generally speaking, to give a preference to any creditor of the same degree; and the preferences proposed to be given by the defendants, are certainly n f a covinous, or illiberal nature.
The Rule discharged.
Before the Court had delivered their opinion on the principal case, Ingersoll suggested, as a collateral consideration, whether Promissory Notes, discounted at the Bank of Pennsylvania, were placed on a footing with protested Bills of Exchange, in point of priority of payment, by the following provision in the 13th section of the Act of Incorporation. "All notes or bills, at any time discounted by the said Corporation, shall be, and they are hereby, placed on the same footing as foreign bills of exchange; so that the like remedy shall be had for the recovery thereof against the drawer and drawers, indorsee and indorsors, and with like effect, except so far as relates to damages, any law, custom, or usage, to the contrary thereof in any wife notwithstanding." 3 vol. Dall. Edit. p. 330. Ingersoll observed, that previously to this provision, *264 there were two points of discrimination between Promissory. Notes and Bills of Exchange:--1st. Promissory Notes were taken by the indorsee, subject to all the equitable circumstances, to which they were subject in the hands of the indorsor. 1 Dall. Rep. 441. And 2d. Protested Bills of Exchange were entitled to a priority in payments by executors, or administrators. The Legislature meant, in the case of Bills and Notes, discounted at the Bank of Pennsylvania, to abolish all distinction between those commercial instruments; and the expression of the act is sufficiently comprehensive to effectuate that object.
But, it was answered, by Moylan, Thomas, and M. Levy, that the Act of Assembly only applied to the remedy upon a Promissory Note; and did not alter the nature and character of the instrument. The existing mischief, intended to be removed, was the right of set-off, claimed by the drawer against the indorsee; and even upon the words of the two acts, it was remarkable, that the priority is given by the first to protested Bills of Exchange; whereas the second places Promissory Notes on the same footing as Foreign Bills of Exchange.
. By the Court. Though the question is not regularly before us, we have no objection to intimate our opinion, that Promissory Notes are not entitled to the same priority as Bills of Exchange. The Act of Assembly applies only to the case of defalcation.